IN RE ESTATE OF WILLIAM MEAD, SR.

ELMER E. MEAD et al., Appellees, v. HUGH CLEMANS, Executor, Appellant.

**EXECUTORS AND ADMINISTRATORS:** Removal of Executor. The probate court has authority to remove an executor upon proper showing of his failure or incapacity to perform the duties of his office.

**TRUSTS:** Removal of Trustee. A trustee appointed under a will may be removed by the probate court upon such a showing as would justify the removal of an executor.

*Appeal from Delaware District Court.*—GEORGE W. WOOD, Judge.

FEBRUARY 12, 1924.

APPEAL from order of removal of executor.—*Affirmed.*

*Johnson, Donnelly & Lynch,* for appellant.

*Trewin, Simmons & Trewin* and *F. B. Blair,* for appellees.

ARTHUR, C. J.—I. William Mead died June 4, 1914, testate, seized of a farm of 180 acres, located about three miles from the town of Manchester, in Delaware County, Iowa. His will was admitted to probate on April 6, 1915, and on the same day John J. Mead and Hugh Clemans, who were nominated in the will as executors, were appointed by the court and qualified.

The will gave the property, real and personal, "to John J. Mead and Hugh Clemans in trust, to be held, managed and controlled by them and sold by them not less than ten years after death" of testator, and proceeds to be distributed by the trustees as by the will directed. The will provided that Martha J. Mead, widow of testator, should occupy a tract of land of about two acres, with the buildings thereon, in a corner of the farm, and that the trustees should pay her $250 a year during her lifetime. The will also provided that the trustees "may distribute from time to time accumulated funds arising from income from the property." The order of court admitting the will to probate and appointing executors provided:

"Such appointment is joint, and neither shall have authority to perform any act as such singly or without the joint and concurrent action of his co-executor. In case of disagreement, the matter in dispute shall be determined by the probate court or the judge thereof. All matters respecting the business of the estate shall be under the supervision and direction of this court, the same as all other estates in probate where administrators are appointed."

II. On May 24, 1919, John J. Mead, joint executor with Hugh Clemans, filed petition for removal of Clemans, alleging mismanagement of the estate so as to cause serious loss thereto, and impair same to the injury of beneficiaries. The petition recited the order of court appointing executors; that the control and management of the estate were intended to be joint and concurrent; that, in violation of said order, Clemans assumed practically the sole control and management of said estate, ignoring his co-executor; that he, John J. Mead, and Clemans did not agree as to the management of the estate; that the beneficiaries complained of the management of the estate frequently to Mead, and Mead called attention of Clemans to such complaints; that he on many occasions protested to Clemans about his mismanagement of said estate and about improper expenditures; that, under the management of Clemans, the mortgage indebtedness on the estate was being increased without good reason, and on account of extravagance and unnecessary expenses incurred; that large amounts were charged against the permanent estate which should have been taken care of by the income from the

estate; that the mortgage indebtedness resting on the land at the death of testator was $7,000; that, in the year 1915, the funds of the estate were exhausted through the mismanagement of Clemans, and the mortgage indebtedness increased to $8,500, to meet obligations of said estate; that, in 1917, the mortgage indebtedness was again increased to $10,000.

Mead, in his petition for removal of Clemans, offered to resign, to the end that the estate might be better managed by the appointment of two new executors in the place of himself and Clemans. On December 1, 1920, Elmer E. Mead and J. W. Mead, heirs at law and devisees under the will, joined in the petition for removal of Clemans and filed an amendment thereto, stating that John J. Mead, one of the executors, had been adjudged incompetent of managing his own affairs, and that a guardian of his property had been appointed, and that for such reason said John J. Mead was incapable of acting as an executor; that Hugh Clemans had in fact been acting as the absolute and sole manager of said estate for the past two years; that the order appointing Mead and Clemans executors provided that neither was granted authority to act without concurrent action of his co-executor; that Clemans had not complied with said order of court, and had acted independently and without concurrent action of said John J. Mead; that said John J. Mead during the past two years had been incompetent to transact business, and was wholly dominated by Clemans; that the farm of which the elder Mead died seized, and which was left in charge of the executors, was well improved, and consisted in the greater part of good soil, was a good producing farm, and had always produced a good revenue; that, when the executors took possession of the farm, there was personal property consisting of stock and grain of the value of about $1,100, and notes in the amount of $762.50; that no proper accounting of the personal property of the estate had been kept or shown in reports of the executors; that reports of the executors were not self-explanatory; that reports set forth that certain personal property had been sold, but failed to show the balance of property in the hands of the executors; that the executors had failed to properly account for the property and funds of the estate; and that it was impossible to

ascertain from the reports filed what property belonged to the estate.

On December 13, 1920, the Cedar Rapids National Bank, guardian of the property of John J. Mead, joined in the application for removal of Clemans.

On December 30, 1920, Clemans filed resistance to the application for his removal, denying charges of mismanagement of the estate. Clemans alleged that, said John J. Mead being now incompetent to act as his joint executor, he, Clemans, is the sole executor of said will, with sole power and right to carry out and execute the trust conferred by the terms of said will; that petitioners, asking for his removal, have no personal interest in said estate, as the interest of each and all of petitioners is contingent upon their being alive ten years subsequent to the death of testator; that he was made trustee of the estate, as well as executor, by the terms of the will; that, as executor and trustee, he is vested with the legal title to the property of the estate, and has the right and power to sell said property without any order of court, and is also vested with the right and power to determine when and how any accumulations may be distributed; that the court has no power to discharge him as executor or to set aside his testamentary appointment as trustee of said property; that, under the will, he is made the trustee of all the real and personal property of which said William Mead died seized and possessed; that the probate court has no jurisdiction or power to cancel, set aside, or annul said trust, even though the probate court may have power to order his removal as executor; and that the court has no jurisdiction and power to remove him as such executor.

III. The court, sitting as a probate court, was vested with jurisdiction and authority to enter the order of removal of Hugh Clemans as executor, under the charges made, if the evidence justified it, by authority of Code Section 3416, which reads:

1. EXECUTORS AND ADMINISTRATORS: removal of executor.

"After letters testamentary, of special administration, or of administration with the will annexed, or general administration, shall have been granted to any person, he may be removed by the court or judge thereof, when the interests of the estate require it, for any of the following causes:

"1.   When by reason of age, continued sickness, imbecility, or change of residence, or any other cause, he becomes incapable of discharging his trust in such manner as the interest and proper management of the estate may require;

"2.   When he shall fail or refuse to return inventories or accounts of sales of the estate, or to make reports of the condition thereof, or fails or refuses to comply with any order of the court or judge thereof, or fails to seasonably apply for authority to sell personal or real estate for the payment of debts or claims against the estate when it shall be necessary for him to do so, or fails or refuses to discharge any of the duties prescribed for him by law, or shall be guilty of any waste or maladministration of the estate, or where for any other reason it appears for the best interests of the estate;

"3.   Where it is shown to the court or judge thereof by his sureties that he has become or is likely to become insolvent, in consequence of which such sureties have suffered or will suffer loss."

The court was vested with jurisdiction and power to remove Clemans as trustee, if the evidence justified, under authority of Code Section 3293, which reads:

2. TRUSTS: removal of trustee. "Trustees appointed by will or by the court must qualify and give bonds the same as executors, and shall be subject to control or removal by it in the same manner, and others appointed."

The testimony is quite voluminous, and we deem it unnecessary and of no benefit to the parties or to anyone else to set it out in this opinion. We have carefully examined the record, and reach the conclusion that the order of the trial court removing Clemans as executor and also as trustee has ample support in the evidence. Accordingly, the order and judgment of the court below are affirmed.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.